HOOD, Judge.
Dupre Louviere instituted the suit against his employer’s insurer for workmen’s compensation benefits, alleging that he is totally and permanently disabled as the result of an inguinal hernia sustained in the course of his employment. The trial court rendered judgment decreeing that defendant provide surgery for plaintiff at de *510 fendant’s costs, that upon plaintiff’s submitting to surgery within 90 days defendant must bring compensation up to date, and that should plaintiff refuse to undergo such surgery he thereby forfeits further compensation. Plaintiff has appealed.
The principal questions presented are: (1) Did plaintiff sustain a hernia as the result of a work-connected accident? (2) Should he be required to submit to surgery ? (3) Is defendant liable for compensation benefits at least until appellate review of the trial court’s judgment has been completed ? (4) Should penalties and attorney’s fees be allowed?
The accident which allegedly caused plaintiff’s injury occurred at about noon on August 22, 1968. Plaintiff at that time was working as a common laborer for the City of Lafayette. While assisting others in lifting a power mower into a truck, he experienced a burning type pain in his left groin. He reported the accident to his supervisor promptly, and he did not finish that day’s work. He received medical treatment the next day.
Plaintiff has continued to complain of pain in his left groin since the accident occurred. He did not return to work for the City of Lafayette after that date, and he has done no heavy work since that time.
He was examined or treated by at least four physicians, all of whom found that he had a left inguinal hernia after the accident. A surgeon who examined him after the accident testified that he had performed a right inguinal hernioplasty on plaintiff in 1954, and that in a subsequent examination made in July, 1955, he found that Louviere had a left inguinal hernia. He thinks the hernia which plaintiff had then was approximately the size of the one he has now, and he feels that his present hernia is the same one which he had in 1955. He concedes that the accident which occurred on August 22, 1968, could have aggravated plaintiff’s pre-existing hernia and made it symptomatic, but he feels that the degree of aggravation resulting from that accident was “very minimum,” since there has been little or no enlargement.
Another physician testified that he examined plaintiff in 1962 for employment purposes, and that he found that plaintiff did not have a hernia at that time. It appears, therefore, that although all doctors agree that he has had a left inguinal hernia since the accident, there is a conflict in their testimony as to whether he had such a hernia before that accident occurred.
The trial judge concluded that plaintiff now has a left inguinal hernia which is disabling, and that it resulted from the work-connected accident which occurred on August 22, 1968.
We think the evidence supports these findings of the trial court. Plaintiff performed heavy manual labor for approximately 13 years immediately before the 1968 accident occurred, without pain and without any signs of a hernia. He experienced pain in his left groin when the accident occurred, he has continued to have pain in that area since that time, and the examining physicians found that he had an inguinal hernia shortly after that accident. These facts suggest to us, as they did to the trial judge, that Louviere sustained a left inguinal hernia as a result of the 1968 accident. Our conclusion, therefore, is that Louviere sustained a left inguinal hernia as a result of the 1968 accident, and that he has been disabled from performing heavy manual labor since that time.
The trial judge, applying LSA-R.S. 23:1221(4) (q), ordered that “defendant make immediate arrangements for surgery, to be paid for by the defendant; that upon plaintiff’s submitting to this operation in ninety (90) days, defendant is ordered to bring compensation up-to-date. * * *, commencing October 30, 1969; that should the claimant refuse to undergo said operation, he shall forfeit further compensation.” Plaintiff contends that the recommended surgery involves an unusual and *511 serious danger to him, and that the trial judge thus erred in ordering him to submit to it.
Plaintiff has established by a' preponderance of the evidence that the hernia resulted from injury by accident in the course of his employment, that the accident was reported promptly to the employer, and that plaintiff was attended by a licensed physician within 30 days thereafter.
LSA-R.S. 23:1221(4) (q) provides that under the circumstances which have been shown to exist here, if the employee submits to the recommended surgery “the employer shall pay compensation benefits as elsewhere fixed by this Chapter.” It also provides that:
“If the employee refuses to submit to such recommended treatment, including surgery, and establishes by a preponderance of the evidence that his refusal is based upon his conscientious religious objection thereto or that such recommended treatment, including surgery, involves an unusual and serious danger to him, the employer shall pay compensation benefits as elsewhere fixed by this Chapter. In all other cases of the employee’s refusal to submit to such recommended treatment, including surgery, the employer shall provide all necessary first aid and medical treatment and supply the necessary truss, support, or other mechanical appliance at a total cost not in excess of five hundred dollars. In addition, the employer shall pay compensation for a period not to exceed-twenty-six weeks.”
In this case plaintiff does not claim that he has a conscientious religious objection to submitting to the surgery. His objection is based solely on the assertion that it involves an unusual and serious danger to him. Under the provisions of the above quoted portion of the statute, the burden of proof rests on plaintiff to establish by a preponderance of the evidence that the surgery involves such a risk or danger.
Plaintiff was examined the day after the accident occurred by Dr. Phillip Pupera, a general practioner, and by Dr. Elmo La-Borde, a surgeon. Dr. Pupera did not state whether he recommended surgery, but plaintiff concedes in his testimony that this doctor advised him that he needed surgery to repair the hernia, and that he originally agreed to submit to that surgery but later changed his mind. Dr. LaBorde testified that he considered plaintiff to be a good surgical risk, and that he recommended, “without any reservations whatsoever,” that plaintiff submit to surgery to correct the hernia. He made that recommendation directly to plaintiff and to Dr. Pupera the day after the accident occurred.
Plaintiff was examined later by Dr. Walter B. Comeaux, Jr., and by Dr. Dominic John Palmintier, both of whom are surgeons. Dr. Comeaux made no recommendation as to whether surgery should or should not be performed, because he felt that plaintiff had had a left inguinal hernia for several years, that he was able to perform heavy labor in spite of it, and that surgery thus was unnecessary. He expressed no opinion as to whether the surgical repair of that hernia would involve an unusual or serious danger to plaintiff.
Dr. Palmintier recommended surgery on the condition, first, that plaintiff lose some weight, and second, that he stop smoking for two or three weeks about the time the surgery is performed. He stated that Lou-viere weighed 186 pounds when he examined him about two months after the accident occurred. Plaintiff testified that he had lost a substantial amount of weight since that examination, and that at the time of the trial he weighed about 160 or 165 pounds. It appears, therefore, that plaintiff has already satisfied the major requirement of the doctor.
Plaintiff relies heavily on the fact that Dr. Palmintier stated that plaintiff was a “poor risk” for surgery. Although the doctor made that statement, he explained *512 that he regarded plaintiff as a poor risk on the day he examined him solely because he was overweight and because he was suffering from bronchial spasms and emphysema due to smoking. He testified that these conditions, if they existed at the time of the operation, would be an “impediment” to the giving of an anesthetic, although they would have no effect on the surgery itself, and it is for that reason that he recommended that both of those conditions be corrected before surgery is performed. When asked whether he would recommend surgery, he testified:
“Yes, sir, I would, provided that he would do two (2) things — one of which was to lose weight and the other was to stop smoking at least while he was undergoing surgery for a period of time.”
In a written report of the examination he made of plaintiff, Dr. Palmintier stated, “This patient should have a left inguinal hernioplasty; however, he should be required to lose some weight and he should cut down on his smoking, if not discontinuing this habit altogether for his health’s sake.” And, the doctor testified:
“Q: In other words, Doctor, if he would have lost weight and if he would have cut down on his smoking or eliminated his smoking, he would have been a fit subject for a left inguinal hernio-plasty ?
“A: That’s correct, Sir.”
Neither Dr. Palmintier, nor any other doctor who appeared as a witness, testified that the recommended surgery would involve an unusual or serious danger to plaintiff. Dr. Palmintier expressed the view that from 90 to 92 percent of these surgical procedures are successful in correcting hernias, and that the fatality rate is less than one-half of one percent. He made no exception as to plaintiff, and we interpret his testimony as meaning that plaintiff would not be subjecting himself to any greater risk than would anyone else in submitting to surgery.
We agree with the trial judge that plaintiff has failed to establish that the recommended surgery would involve an unusual and serious danger to him. We thus find no error in that part of the judgment appealed from which orders, in effect, that plaintiff either submit to that surgery or forfeit additional compensation benefits.
Plaintiff contends, alternatively, that the trial judge erred in failing to order defendant to continue to pay compensation benefits to him, even though he refuses to submit to surgery, “until the plaintiff has had his day in court, including appellate review, to test the reasonableness of his grounds for refusal.” To support that argument he relies in Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4 Cir. 1968).
LSA-R.S. 23:1221(4) (q), relating specifically to the treatment and surgical repair of inguinal hernias, was added to our workmen’s compensation laws by Act 25 of the Extra Session of 1968. We have already observed that this newly added sub-section applies in this suit. The Hamilton case did not involve an inguinal hernia, and it was decided before Act 25 of the Extra Session of 1968 became effective. Hamilton thus is not applicable here.
As already noted, LSA-R.S. 23:1221(4) (q) provides that if the employee refuses to submit to the recommended treatment, without a legally acceptable reason, then the employer is required to provide only medical treatment at a cost not in excess of $500.00, and “in addition, the employer shall pay compensation for a period not to exceed twenty-six weeks.”
In the instant suit defendant paid compensation benefits to plaintiff at the rate of $35.00 per week, from August 29, 1968, *513 until October 29, 1969, or for a total of 62 weeks. The payments thus made amount to the aggregate sum of $2,170.00. The additional sum of $140.00 has been paid by defendant for medical treatment. The evidence does not show that any other medical expenses have been incurred.
It is apparent that defendant has paid compensation benefits to plaintiff for a period greatly in excess of the twenty-six weeks provided in LSA-R.S. 23:1221(4) (q). Defendant has formally offered to provide the recommended surgery to repair plaintiff’s hernia, and the trial court has ordered defendant to make arrangements for that treatment. Although plaintiff has indicated in his testimony that he will refuse to submit to the surgery, the judgment rendered by the trial court affords him an opportunity to reconsider. If he refuses to submit to the surgery tendered in response to the judgment rendered herein, then under the above cited provision of the compensation law he is entitled to compensation benefits “not to exceed twenty-six weeks.”
We feel that under the circumstances presented here defendant is not obligated to continue to pay weekly compensation benefits until the case has been reviewed on appeal. To hold otherwise would render meaningless the above quoted statutory provision limiting payments to twenty-six weeks.
Plaintiff’s claim for penalties and attorney’s fees is based on the holding in Hamilton v. New Amsterdam Casualty Company, supra. We have already pointed out that that case is not applicable here. In the present suit defendant was justified in discontinuing the payment of compensation benefits, despite the fact that plaintiff is disabled, because plaintiff’s injury consisted of an inguinal hernia, the provisions of LSA-R.S. 23:1221(4) (q) are applicable, defendant has tendered the recommended treatment and has paid compensation for twenty-six weeks, and plaintiff has indicated that he will refuse to submit to that treatment. We find that defendant was not arbitrary or capricious in discontinuing such payments, and that the trial judge correctly rejected, plaintiff’s demands for penalties and attorney’s fees.
Our ultimate conclusion is that the judgment rendered by the trial court is correct and that it must be affirmed.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.